No. 49.—MOSES MOUNCE, plaintiff in error, *vs.* JAMES BYARS, *et al.* defendants.

[1.] The rule, that the vendor's lien shall not be set up, to the exclusion of a *bona fide* creditor, does not apply to prevent the vendor of a tract of land to J, from insisting on his lien upon the same, as against the rights of W, who becomes security for J upon a promissory note, before the conveyance of the land from the vendor to J, and who receives from J a deposit of the title deeds, for his protection.

[2.] Where, at the time that W thus became security for J, there had been an understanding between them, that J was to give W a mortgage upon a negro slave, for his protection, and J failed so to do : but subsequently, and after purchase of certain lands from another person, by an independent and

distinct agreement between W and J, the latter deposited the title deeds to these lands with W, as an equitable mortgage, to protect him against the payment of the note, no other advance or consideration having been paid by W: *Held,* that this did not place W in the attitude of a purchaser for valuable consideration, without notice, and give to him a lien on the land, superior to that of the vendor.

In Equity, in Butts Superior Court.    Tried before Judge STARKE, March Term, 1854.

This was a bill filed by Moses Mounce, against James Byars, Richard G. Byars, William Byars and John Goodman. The bill stated, that in 1839, complainant owned one hundred and twenty-two acres of land, divided into several lots, and known as a part of the McIntosh or Indian Spring Reserve; that he purchased of Robert Coleman, who had purchased at public sale from the State's Commissioners; that Coleman had paid the instalments due the State for the land, the receipts for which payments were indorsed on the certificates of sale given by said commissioners; that Coleman, for a fair and valuable consideration, had transferred said certificates to the complainant; that complainant, on the 13th November, 1839, sold said land to James Byars, for the sum of $1300, for which he took Byar's notes; the last one of which fell due January 1st, 1842; and that at the time of filing the bill, there remained due complainant, of said purchase-money, the sum of $925 $\frac{42}{100}$, principal and interest.    The bill charges that at the time he sold said land, no grants had been issued for the lots, except lot No. 40, for which complainant executed to Byars a deed in fee simple, and transferred to him the said certificates of sale of the other lots; that Byars went immediately into possession of said lots, under said sale.

The bill charges, that in 1839 or 1840, James Byars sold the land to William Byars, his brother, and immediately thereafter ran away and left the State; and that in a short time William Byars sold, or pretended to sell, said lots to Richard G. Byars and John Goodman, who are now in possession of the same.

The bill further charges, that James Byars, when he left the

State, took all his effects with him; that complainant took no security on the notes given for said land; and that William Byars, Richard G. Byars and Goodman, at the time they purchased said lots of land, had notice and were apprized of the fact that James Byars had not paid the purchase-money for the same.

The bill prayed that the Court might decree the sale of the land, and order the proceeds to be applied to the payment of his debt against James Byars.

The defendants, William Byars and John Goodman, filed their answers, denying that at the time they purchased said land, they had any knowledge or notice of the purchase-money, or any portion thereof, remaining unpaid by James Byars to the complainant. The defendant, James Byars, having failed to answer, the bill, as to him, was taken *pro confesso.*

It appeared in evidence that the deed of James to William Byars, and the transfer of the certificates of purchase, were intended to secure him against ultimate loss on a certain debt to one William Jones, on which the said William Byars had (before the deed and transfers) become security for James.

Some evidence was adduced for the purpose of bringing home to William Byars, notice of the lien of Mounce for the purchase-money, and also to show notice to Richard G. Byars.

The character of the evidence will be seen, from the charge given the Jury by the Court; and upon which the errors alleged in this case are assigned.

- The Court charged the Jury as follows: "If the complainant sold this land to James Byars, taking no security for the purchase-money, and conveyed by deed that part to which he had a legal title to the purchaser, and delivered him the certificates for the other lots, and allowed James Byars to go into possession of the land as long as the land remained in the hands of James Byars, the complainant had an equitable lien on the land for the purchase-money, or any balance thereof which might be due him; and if the lands were now in the hands of James Byars, I apprehend there would be no serious difficulty in sustaining the complainant's lien. But if, after the sale by

complainant to James Byars, and after James Byars was permitted, by Mounce, to go into possession of the land, James Byars, the purchaser in possession, having received from Mounce an absolute deed to one of the lots, and a deposit of the certificates for the other lots; now, if James Byars, to indemnify William Byars against loss, in standing his security to William Jones, executed to William Byars a deed to one of the lots and delivered to him such evidences of title to the other lots as he had received from Mounce, viz: the certificates of purchase; now, if William Byars, at the time he took the deed and received the certificates of purchase, had no notice that the purchase-money, or a part of it owing to Mounce, was unpaid, then William Byars is an equitable mortgager, and stands in the position of a purchaser for a valuable consideration, without notice; and if he acted in good faith, he is to be treated as a purchaser in good faith for a valuable consideration, without notice and is protected against complainant's lien. If Richard G. Byars and Goodman are purchasers in good faith and for a valuable consideration from William Byars, and he had no notice, they are as securely protected against complainant's lien as William Byars is, although Richard Byars, at the time he purchased, may have had notice.

The complainant has, in the argument of his Counsel, contended that although William Byars had no *actual notice,* that still, he had *constructive notice.* As a general rule, the law will impute to a purchaser the knowledge of a fact, of which the exercise of ordinary diligence and ordinary prudence would have apprized him. Whatever is sufficient to put the party upon inquiry, is considered, in Equity, to put the party upon notice; and, under these rules, the complainant's Solicitors have contended that as James Byars and William were brothers, James was known to William as a money-borrower, as only having one negro, worth three or four hundred dollars, and some other property only worth a few hundred more; that these brothers had long known each other, and lived only a mile or two apart, William must have been put upon inquiry, and therefore notice was conveyed to him that the purchase-money to Mounce was

unpaid.    But in the opinion of the Court, although these things may have been well known to Wm. Byars, yet, they are not sufficient, in law, to charge Wm. Byars with constructive or actual notice.    It is the duty of the Court to instruct you as to what facts do or do not amount to notice ; whether such and such facts have been proved or not, are facts entirely for your consideration.    And you are instructed, that although you may be satisfied, from the evidence, that James and William Byars were brothers, James being known to William as a money borrower, for whom he would not stand without security; although these brothers had long known each other; and although William knew that James had only one negro girl, worth three or four hundred dollars, and some other property, worth some three or four hundred more ; and although James and William lived only a mile or two apart, and all these facts may have been well known to William, they are not sufficient, in law, to charge William Byars with notice, in the face of his answer, denying notice.    That part of the answer of Wm. Byars, denying notice, is responsive to the bill, and you will not conclude he had notice, unless that part of his answer has been overcome by testimony exceeding and outweighing the testimony of one witness.    His having notice after he incurred the liability for his brother to Jones, and took the deed and certificates for his indemnity, does not affect him —the notice came too late.    I have been requested by complainant's Solicitors to charge you, "that if this land was transferred to William Byars by James, to secure an antecedent debt, the claim or lien of Mounce is stronger than Byars', unless William Byars, at the time of the deposit of the certificates, made a new advance of money, or in consequence of their deposit, took upon himself some new obligation for James, the claim or equity of Mounce is still the strongest, and has precedence in Equity."    In cases of equitable lien, both conflicting liens being equitable, the oldest in point of time has the precedence : but in this case, I do not feel it my duty to charge precisely as requested, but say to you that if, when William stood

security for James, it was agreed between them that James should secure his brother against loss by a mortgage on a negro, and failed to do so, but disposed of the negro in another way; and if the security agreed on was not given, and afterwards William was secured by a deed to one of the lots, and by deposit of the certificates for the others, if William was without notice of Mounce's lien, he is protected against it.

I am further requested by complainant's Counsel to charge you, "that an equitable mortgage created by a deposit of the title deeds to secure the payment of an antecedent debt, is not such a lien on the land as to overcome the vendor's lien for the purchase-money". I must decline so to charge. Although an equitable mortgage, created by a deposit of the title deeds to secure the payment of an antecedent debt, is not such a lien on the land as to overcome the vendor's lien for the purchase-money, yet if you believe that the security or indemnity taken by William Byars in this case, was taken pursuant to a previous agreement, that the security was to be indemnified against loss in standing security to Jones, William Byars stands on the same footing he would have done, if the indemnity had been given at the time of his becoming security for the Jones debt.

I am further requested by complainant's Counsel to charge you, "that when two parties, each, claim a lien upon an equitable interest in land, that no notice is necessary to enable the party having the first lien, in point of time, to enforce his lien. That William Byars took such an interest, and therefore is not protected, no notice to him having been necessary. I must decline to charge as requested, and refer you to what I have already said as being the law on this subject. I am further requested by complainant's Solicitor to charge, " that the deposit of the title deed to secure an antecedent debt, is a voluntary assignment, and the party securing them cannot be considered a *bona fide* purchaser, so as to defeat the complainant's right to his lien as vendor. I cannot so charge, but say again, that if, at the time William Byars stood security to Jones, his principal was to indemnify him by a mortgage, and did not do

so, and afterwards made this deed and deposited these certificates, in lieu of the indemnity originally agreed on, the deposit of the certificates is not a voluntary assignment, nor is it void, but is founded on a good and sufficient consideration, and William Byars is entitled to notice.

Again, I have been requested by complainant's Solicitor to charge you, "that whatever facts or circumstances are sufficient to put a prudent man upon inquiry, as to the right or interest a man may have in an estate which he may propose to sell or mortgage, is considered to convey notice in Equity". I have already told you this is the Law.

After which the Court, at the request of complainant's Counsel, charged the Jury as follows: "the fact that James Byars promised to give a mortgage to Wm. Byars, on a negro woman, to indemnify him as his security on the Jones debt, and afterwards disposed of the negro in another way, is a new matter set up by defendant, and must be proved by other witnesses, before the same is evidence to the Jury, the same not being responsive to the bill."

Before the conclusion of the charge, the Court was notified by complainants that they excepted to that part of the charge, in which the Court gives its opinion that certain facts, if proven, do not amount to notice; still, the Court refused to alter its charge.

After which the Jury retired and returned a verdict for defendants.

And the complainant excepted to said charge of the Court.

HAMMOND & HAMMOND; MCCUNE, for plaintiffs in error.

FLOYD, for defendants.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] We see no reason to interfere with the judgment of the Court below, on any point, except that made upon so much of the charge to the Jury as instructed them, that "if, when William Byars stood security for James it was agreed between

them, that James should secure his brother against loss, by a mortgage on a negro and failed; and if the security agreed on was not given, and afterwards William was secured by a deed to one of the lots, and by a deposit of the certificates for the balance—if William was without notice of Mounce's lien, he is protected against it"; and to so much of the charge in connection with this as instructed the Jury, that if James Byars had thus agreed with his brother William, to give him a mortgage on a negro, for the purpose specified, and failed to do so; and afterwards, "to indemnify or secure William Byars in standing his security, executed to him a deed to one of the lots, and delivered to him such evidence of title as he had received from Mounce, viz: the certificates of purchase; now if William Byars, at the time he took the deed and received the certificates, had no notice that the purchase-money, or a part of it owing to Mounce was unpaid, then William Byars is an equitable mortgagee, and stands in the position of a purchaser for a valuable consideration without notice; and if he acted in good faith he is to be treated as a purchaser, in good faith, for a valuable consideration without notice, and is protected against complainant's lien".

In another portion of his charge, the Judge admitted, that "though an equitable mortgage, created by a deposit of title deeds to secure the payment of an antecedent debt is not such a lien on the land, as to overcome the vendor's lien for the purchase money;" yet, he proceeded to say again, that if there had been an agreement, at the time William Byars became security for his brother, that the latter would, for his protection, give him a mortgage on a negro, and James failed to do so; but afterwards, in lieu thereof, turned over to him these title deeds, as security against payment of the note, that in such case, "William Byars stands on the same footing as he would have done, if the indemnity had been given at the time of his becoming security".

From all of which instruction, it seems that the Court below considered the previous agreement between James and William Byars, in relation to the mortgage on a negro, as taking the

case out of the rule, which he had been asked to recognize, and placing the defendant, William Byars, in the situation of a *bona fide* purchaser for a valuable consideration.

[1.] The consideration for this equitable mortgage, it is said, will be found in the fact, that William Byars had become security for his brother, on a promissory note ; that this deposit of title deeds was intended to protect him against the liability thus assumed, and that thereafter, he occupied, towards that brother, the relation of a purchaser without notice.

It seems that William Byars had become security for James, on this note, before the sale of the land in question to James, by the complainant; and no reference could have been had to it, as part of James' property, giving him responsibility and credit, when William became his security. This is not, therefore, a question between a creditor and the vendor's lien ; and the rule that the vendor's secret lien shall not be set up to the exclusion of a *bona fide* creditor, so ably vindicated by Ch. J. *Marshall*, in *Bailey vs. Greenleaf*, (7 *Wheat.* 46,) and recognized by this Court, in *Webb vs Robinson*, (14 *Ga. R.* 216,) is not here applicable. The rule does not even apply to a judgment creditor, who becomes so before the conveyance to the debtor ; for each party, in that case, would have an equitable lien, and the maxim, *Qui prior est in tempore, potior est in jure*, would prevail, (*Finch vs. Winchelsea*, 1 *P. Wm.* 278. *Mackreth vs. Symmons*, 15, *Ves.* 354. *Bailey vs. Greenleaf*, 7 *Wheat* 56.)

[2.] His Honor, Judge STARKE, however, was of the opinion, that as James Byars had agreed to give his brother a mortgage upon a negro slave, to protect him, as security on the note, and failed to do so, but afterwards made this deposit in lieu thereof, William Byars was thereby placed in the position of a purchaser for a valuable consideration, without notice.

We cannot see, ourselves, what connection there was, under the circumstances, between the agreement to give a mortgage on a slave, supposing it to have been made, and the deposit of these title deeds as collateral security. It appears that the latter, by a totally independent and distinct understanding,

without other advance or consideration, was substituted for the former, after the contract between the parties, that is to say, after William had become security for James; and that this collateral security consisted of property which was not owned by James, at the time his brother became security, and he agreed to give the first mortgage. If there had been anything like an understanding between the brothers, at that time, that James had the purchase of this land in prospect, that it was his intention to pay for it; and if he failed to give the mortgage on the slave, this deposit of title deeds should be made in its stead, then there would have been a connection between the two things; and it might, perhaps, have been said, that William was influenced in becoming his brother's security, by the consideration that the latter was to own this property; and he (William) should, therefore, be regarded in the light of a creditor with a lien upon this land. But there is no such evidence—nothing, in fact, to connect the deposit of these title deeds with the agreement between William and James Byars, at the time he became security, as to the protection of the former, because of his becoming security for the latter. And William Byars, therefore, appears here as a volunteer.

We are not sure, however, if it had been otherwise, even if William had become security for James, after the purchase of the land by the latter, that his lien would have been superior to the vendor's lien on the land; for it was only a contingent liability which he had assumed, and not an indebtedness. He might never have had to pay the note. Can he properly be said, then, to have occupied the relation of a creditor to his brother, on this account? At most, it would seem to have been only an equitable interest which he had in property of his brother, after becoming his security; and here, again, would apply the maxim, that of two equal equities, that is superior which is prior in point of time.

The view of the Court below, which we have been considering, proceeds upon the assumption, that James Byars had agreed to give a mortgage upon a slave to William, in consideration of the latter becoming his security. But we can find no

such statement in the record, as it comes to us, except in the answer of William Byars; and the Court expressly charged the Jury, that the answer, on this point, was not responsive to the bill; and therefore, not evidence. If this be so, though the Court had been right as to the legal principle which he stated, he applied it to a hypothetical state of facts, not in evidence, and he was therefore in error.

On the whole, we think the Court erred in holding, that in this transaction, William Byars occupied the position of a pur-chaser without notice, for a valuable consideration, and that he stands on the same footing that he would have done, if this equitable mortgage had been given, at the time of his becoming security.