HENRY S. CHANCE, plaintiff in error, vs. ABBOT M. McWHORTER et al. defendants in error.

| 26 | 315 |
| o117 | 587 |

A vendor's lien upon land for the unpaid purchase money, will not be set aside in favor of a mortgage given by the vendee to secure an antecedent debt; nor will a purchaser, with notice at a judicial sale under the foreclosure of said mortgage, be protected against said lien; especially where he is a joint debtor, with the mortgagor, upon the debt intended to be secured, and the price at which the property was bid off by him is applied to the payment of said debt.

In Chancery, from Carroll Superior Court. April Term, 1858. Honorable GEORGE L. RICE presiding.

See the statement set out in the opinion of the Court.

MERRELL, for plaintiff in error.

CHISHOLM & WADDELL, contra.

By the Court.—LUMPKIN J. delivering the opinion.

This was a bill filed by the complainant against the defendants, and containing, amongst other things, the following charges and allegations in substance, to-wit: That complainant on the 14th day of February, in the year 1854, sold to the defendant Abbott M. McWhorter, lot of land, No. 147, in the second district of Carroll county, and executed to him,

an absolute deed of conveyance for the same; and took said defendant McWhorter's notes for $1,050 for the purchase money, and that said McWhorter entered into and took possession of said lot of land in pursuance of the said purchase. That afterwards to-wit, on the 27th day of May, in the year 1854, the said defendant McWhorter executed a mortgage deed, conveying said lot of land to the firm of J. S. Farrer & Brothers, to secure the payment of a debt of $481 58-100, which was owing by the defendants, Abbott M. McWhorter, Larkin H. Davis and Alfred B. Davis, merchants and partners, using the name and style of Davis, McWhorter, & Co.; said firm debts having been contracted, long before the sale of said land by the complainant to the said McWhorter. That said defendants fraudulently executed said mortgage, for the purpose of depriving complainant of his equitable lien on said land for the balance of his purchase money, namely, $708 24-100, besides interest, which was yet due and unpaid; and for which he held no security, but the notes of the said McWhorter. That J. S. Farrer and brothers proceeded to foreclose said mortgage, and had the execution issuing thereon, levied on the said lot of land, and the same was sold on the 1st Tuesday in July, 1857, at which time complainant by public proclamation before any bid was made, gave notice that he should seek to enforce his lien on said land for the purchase money still due thereon. That defendant Davis was present and near enough at the time to have heard the same, before he bought; and the complainant believes and so charges, that the defendant Davis did hear all that was then and there said by complainant, in relation to said land, and the sale thereof; and that complainant would seek by virtue of his vendor's lien, to subject said land to the payment of the purchase money still owing thereon; and that the said Davis, then and there became the purchaser of the said lot of land No. 147, in the second district of Carroll county, with full, complete and perfect notice and knowledge of complainant's equitable

right in and lien upon the same; and that he the said Larkin H. Davis now holds a deed from the Sheriff, conveying to him, all the interest, title and claim, to the said lot of land, that the said Abbott M. McWhorter had therein before the sale. That said L. H. Davis bid off said lot of land, at and for the sum of $696, when the same was worth $1,200; and but for complainant's lien aforesaid, would have brought that sum; that the money arising from the said sale, paid off the debt, due by the defendants to J. S. Farrer and Brothers; and left a surplus of $100, which was applied to the discharge of a debt, owing by the defendants to Gilland & Howell, or some other person; that the Sheriff has executed titles to Davis to the land; and that he is about to transfer the same to an innocent purchaser for value, without notice.

The bill contains a prayer that Davis be enjoined from conveying the land; that the same be resold and the proceeds applied to the extinguishment of complainant's lien, and a decree against the defendant McWhorter for the amount of the notes.

To this bill, a general demurrer was filed for want of equity; and upon argument had thereon, the presiding Judge sustained the demurrer, and ordered the bill to be dismissed.

Was there equity in the bill? In other words, can the complainant in such a case as this, assert a lien on the land sold to McWhorter for so much of the purchase money as remains unpaid?

As between vendor and vendee, the settled rule is, to sustain the implied lien for the purchase money, where the mere personal security of the purchaser has been taken, and on the other hand to consider the implied lien as waived, whenever the security of a third person is given. See *Blount's Ambler*, 723, (*n.* 1.) where all the English authorities are collected and arranged; and also 4 *Kent's Com.* 146, and cases there cited.

Chance vs. McWhorter, et al.

In this case, it is not pretended, that there was any collateral security of a third person taken; or any agreement or understanding, that the vendor should or would relinquish his right to look to the property for the payment of the purchase money. The lien then clearly existed as against McWhorter. Has it become subordinate to the mortgage given by McWhorter to J. S. Farrer and Brothers, and the judicial sale under it? That is the question, and it is an important one; and one that has never been decided by this Court.

There is to say the least of it, an apparent conflict of authority upon this point and a bright array of names on both sides. The Supreme Court of the United States, is supposed to have adjudged this question, for the defendants in the Court below, and the defendants in error in this Court in *Bailey vs. Greenleaf and others*, (7 *Wheaton*, 46;) and the Supreme Court of Maryland, in *Roberts vs. Salisbury*, (3 *Gill and Johns.* 425;) and of Tennessee, in *Gann vs. Chester*, (5 *Yerger*, 205) are cited in support of the same doctrine. In *Shirley vs. The Congress Sugar Refinery, and another*, (2 *Edward's V. C. Rep.* 511;) the N. Y. Court dissents from the opinion of the Supreme Court of the United States. And in *Truloe vs. Williams*, (3 *Wharton* 493;) it is decidedly condemned by Chief Justice Gibson, who pronounces it, "unsatisfactory upon principle and precedent." And to the memory of the late lamented Gibson, I beg leave to record this passing tribute, that while at the time of his death, he had been longer in office than any cotemporary Judge in the world; that none other on earth, united the same originality, vigor, clearness, precision of thought with the same elegance and felicity of expression. He is unquestionably for force and beauty of style, the ablest judicial writer that this or any other country has produced. His decisions and Lord Stowell's, are amongst the few, that all lawyers love to read.

Chief Justice Marshall in delivering the opinion of the Supreme Court, in *Bailey vs. Greenleaf*, considers that the

vendor's lien cannot be asserted against creditors, holding under a *bona fide* conveyance from the vendee; and doubts whether it is settled in England, that the lien remains against the assignees of a bankrupt or creditor coming in under the purchaser, by act or operation of law.

Vice Chancellor Edwards, in commenting upon this decision, *Shirley vs. The Sugar Refinery*, remarks: " Had the learned Chief Justice gone a little further and looked into some later cases, particularly, *Grant vs. Mills*, (2 *V. and Beam.* 306 ;) *and ex parte Peake*, (1 *M. C. Rep.* 346,) (which do not appear to have fallen under his observation,) it is probable his doubts upon this point, would have been removed.    In the first of these cases, Sir Wm. Grant treats it as a settled rule, not to be disputed, that whatever equity, the vendor would have against the purchaser, he is entitled to, against his assignee ; and in the last case, where the question was between the vendor and the assignee, and creditors of a bankrupt vendee, Sir Thomas Plumer, V. C. lays it down as clear, that the vendor's lien exists against the assignee, where the vendee becomes bankrupt, they being in no better condition than the bankrupt himself."

And I beg leave to add, why should they be ?    Why should the assignees be in any better condition than the assignors ? They pay no purchase money on the transfer, and take only what the debtor had; and as he held it, subject to all countervailing equities.    The doctrine in England in bankrupt cases, is not distputed.    (2 *Sudg. on vendors*, 81 ; 12 *Ves. jun.* 349 ; *Milford vs. Milford*, 9 *Ves. jun.*, 99 ; 2 *V. and Beam.* 309 ; *Powell on Mortgages*, 542 ; *Taylor vs. Wheeler*, 2 *Vernon*, 564; *Finch vs. Winchelsea*, 1 *P. Wms.*, 280; *Cowper*, 565 ; *Dougl.* 636.)    The American cases, with but few exceptions, accord with the English decisions, and establish the principle, that it is only the purchaser, who has paid a valuable consideration, on the transfer, without notice, in the ordinary course of business, that is protected, and put in any better situation than the assignor    (1 *Dall.* 430 ; 4

*Brow.* 368; 3 *Raule*, 99, 203; 4 *Raule*, 345, 354; *Wolf vs.* *Erchelberger*, 2 *Penn. Rep.*, 346; 1 *Wharton*, 433; 10 *Johns. Rep.* 540; 13 *Wend.*, 570; 16 *Wend.* 574; 15 *Mass. Rep.*, 156.)

Mr. Sugden, now Lord St. Leonards, the distinguished author of the treatise on the law of vendors, (now in its 9th edition,) after laying down the rule, that persons coming in under the purchaser by act of law, as assignees of a bankrupt, are bound by an equitable lien, although they had no notice of its existence; because the assignment by operation of law, passes the right of a bankrupt, precisely in the same plight and condition, as he possessed them, observes: "And the creditors claiming under a conveyance from the purchaser, are bound in like manner as assignees, because they stand in the same situation as creditors under a commission." (2 *Volume* 74, 75.)

And in *Farrell vs. Heelis*, (*Ambler*, 723;) Earl Bathurst acknowledged the rule to be, that the equitable lien for the purchase money, where the seller has not waived it by taking other security, is good, not only against the purchaser, but against his creditors, whether under a commission or under a deed of trust, in the nature of a commission. It is certain, he says, that persons claiming under such a deed, stand in the same situation as creditors, under a commission.

Without consuming more time in collating the cases, we remark that this question has been substantially passed upon by this Court. In *Webb vs. Robinson*, (16 *Ga. Rep.* 216;) after an extensive review of the authorities, this Court say, (page 230,) "Our position is, that the protection of the creditor, depends upon the circumstances under which the debt was contracted. If without notice he is protected. *Antecedent debts do not therefore belong to the protecting class.*"

Farrer & Brothers were not induced to extend credit to McWhorter, the vendee, on the faith of this property. The debt to them, to secure which the mortgage was taken, was contracted long prior to the sale.

In *Mourice vs. Byars and others*, (16 *Ga. Rep.* 469;) Judge Starnes, in delivering the opinion of the Court, very properly remarks, that the vendor's lien is not postponed, to even a judgment creditor, who becomes so, before the conveyance to the debtor, *page* 477.

In the case of *Scott, Carhart & Co. vs. Warren & Spicer*, (21 *Ga. Rep.* 410;) the Judge who delivered the first opinion in that case, says: "It is conceded, that a vendor's lien is protected against an older judgment." And in the same case, Judge BENNING, says: "The judgment of the creditor, did not give credit on the faith of the mortgaged property; for he credited before his debtor had acquired any interest in that property. The mortgagee credited exclusively on the faith of that property;" so we repeat here, that Farrer & Brothers did not credit Davis, McWhorter & Co. on the faith of this mortgaged property; for the credit was given to them before McWhorter, one of the debtor-firm, acquired any interest in that property. Chance credited McWhorter exclusively on the faith of that property.

Judge McDONALD dissented from the majority of the Court, upon the main point decided in the case last referred to, upon the ground, that the vendor by executing a conveyance and taking a mortgage, had parted with the title, and waived thereby his equitable lien and placed himself upon a footing with other creditors. We do not understand him, as disagreeing upon this point:

If this doctrine be correct, upon what principle can the demurrer be maintained? Is not the lien of a judgment creditor, equal in every respect to that of a mortgage creditor? When a contest arises between them in the distribution of funds, arising from the sale of the debtor's property, it is the priority of date that gives to one the preference over the other.

In the case at Bar, suppose the mortgaged premises had been sold under an antecedent judgment, and notice given at the sale of the vendor's lien; the purchaser, would be

subject to that lien, and yet the judgment creditor would hold against a junior mortgage. Would it not be absurd then to hold, that a purchaser under the mortgage with like notice, would be protected? A sale under the judgment, would not protect the purchaser with notice, and yet a sale under the mortgage would, when the money arising from the latter sale, would be paid over to the older judgment lien, as against the mortgage creditor!

But the strong and unanswerable view of this subject is this, as against the vendor's lien in this case, the mortgagee is a mere *volunteer.* He paid no present consideration, and gave up no present right in order to obtain this mortgage. And while it is not strictly a *voluntary conveyance,* under the statute of Elizabeth, the object being to secure a pre-existing debt; but to put the rights of such parties upon the same footing with actual purchasers for a valuable consideration, without notice, is to confound two legal principles, which are wholly distinct in their equities. Farrer & Brothers have surrendered nothing; they have made no fresh advances of money or goods; they have parted with no right, substantive or formal in compensation for this mortgage: they cannot be placed in the category of purchasers, by their character or position.

A junior judgment, or a junior mortgage, to the date of the sale, to enforce the payment of a debt contracted upon the faith of this property, would set aside the vendor's lien. For in the language of Chief Justice Marshall, in *Baily vs. Greenleaf,* "to the world, the vendee appears to hold the estate, divested of any trust whatever. And credit is given to him in the confidence, that the property is his own in equity as well as law. It would seem, therefore, inconsistent with the principles of equity, and with the general spirit of our laws, that such a lien should be set up in a Court of chancery to the exclusion of *bona fide creditors.*"

I subscribe cordially to this doctrine, and for myself, I would go further and express the desire, that the whole doc-

Chance vs. McWhorter, et al.

trine of the vendor's lien should be abolished by the Legislature; and in lieu thereof, enact, that the vendor should reduce his lien to mortgage and have it recorded as are all other mortgages, giving it a preference over all other liens, where by law, the vendor is now entitled to be preferred. But we are not here to make law.

Who does Chief Justice Marshall mean by *bona fide* creditors? Certainly not those who represent antecedent debts. It does not distinctly appear, from the report of *Bailey vs. Greenleaf*, that it was a case of this sort. The contrary is likely true. The creditor for whose security the conveyance was made, had entered into engagements for Greenleaf's, the plaintiff's vendee, to a large amount; and the deed was made to secure these, and also to secure the creditor for any further advancements he might make, or future engagements he might enter into an account of Greenleaf. The creditor, therefore, may have made further advances, and incurred subsequent liabilities on the credit of the security; and if so, he was a mortgagee, as he appears to have been considered, not merely for antecedently contracted debts, but also in consideration of fresh advances and liabilities. Under such circumstances, without notice of the prior lien claimed by the vendor for the purchase money, the right of the mortgagee might well be preferred. Many of the remarks which fell from the Court would seem to apply solely to a case of the latter description; while some of them proceeded apparently upon the broader ground, which we have been considering. One thing is certain, the decision fails to show any distinction between assignments in bankruptcy and statutory insolvency, which if not admitted to be, nevertheless *are*, clearly established to be, adverse to the conclusion, at which the Court came in *Bailey vs. Greenleaf*; and an assignment by the act of the party. It fails to show further, that by the latter, antecedent creditors became purchasers for a specific consideration. And both of these were necessary to constitute this an authority against the plaintiff in error.

But aside from and independent of these general grounds, Davis, the purchaser, against whom this vendor's lien is sought to be set up, has no equity under the facts of this case. The bill charges, that the mortgage was given to secure a debt, which Davis, the purchaser, McWhorter and one A. B. Davis, the other partner, were jointly owing. That at the sale under the mortgage foreclosure, Davis bid off the land, at the sum of $694 00; and that the proceeds were applied to the payment of the partnership debt, due to Farrer & Brothers; and one other debt of the same character, due to Gilland & Harrell. Davis bought the land at a trifle over one-half its value; and was enabled to do so, on account of the incumbrance hanging over it. The purchase money went to the discharge of a debt which he was legally bound to pay. Instead of paying for the land, the money went to the discharge of his own debt. What equity has he then, against the vendor? The case is simply this. Here is a vendor endeavoring to assert and enforce his lien, against a purchaser who bought with full notice, that the purchase money was unpaid, and who has paid nothing for the property except what went to the extinguishment of his own debt!

Again it is charged in the bill, that the defendant Davis and McWhorter, fraudulently combined and collusively executed the mortgage to Farrer & Brothers, for the purpose of defeating Chance, the complainant, in the collection of his purchase money; and destroying his vendor's lien upon the land. Is argument or authority needed to show, that an advantage thus erroneously obtained, will not be countenanced? The general rule is conceded, that a purchaser with notice, from one without notice, will be protected; that is, that if Farrer & Brothers were *bona fide* purchasers from McWhorter, and we have endeavored to prove they were not, and Davis had bought from them, his title would have been good, notwithstanding express notice could be brought home to him. But, suppose this second purchaser, knowing the vendor's

lien, and consequently, that if he should buy directly from the vendee, he could not be protected, concocts a plan to accomplish that circuitously, which he could not do directly. And in furtherance of it, confederating with McWhorter, he procures this mortgage to be made, and by a judicial sale, gets the land at a little over half its value ? And the price that he does pay, goes to his own debt? Does not a bill, pregnant with such weighty averments, require an answer? Admitting them by demurring to be true, should it be dismissed for want of equity?

In every aspect of this case, the merits of it, are with the vendor. When Farrer & Brother's took the mortgage from McWhorter, they parted with nothing. They executed no satisfaction, no release. The act and effort of McWhorter to secure the creditor, was therefore gratuitous. The land destined to pay the creditor, continued under the mortgage subject to the same equities, which adhered to it before. And yet the creditor has actually been paid ; and that too by the debtor, who was legally liable for the debt. He is not hurt. Were it otherwise, the blame rests where it should. Let him pocket the loss.

Judgment reversed.