MASHBURN & COMPANY *et al.* v. DANNENBERG CO.

1. Whether such a time has elapsed after a statement to a commercial agency of a person's financial ability, that no one should act thereon as a basis of credit, can not be fixed by any arbitrary rule, but must be determined in each case according to its circumstances.
2. Where several such statements are made, and at the time the credit is extended some of them are too old to be acted on and others not, but credit is extended on each, in order to reclaim the goods sold it is incumbent on the seller to show that they were sold on the faith of the statements which had not become "stale."
3. Representations as to financial standing and worth, made to induce a sale on credit, when acted on by the seller to his injury, will, if untrue, constitute such a fraud as will avoid the sale, at the option of the seller, though the buyer did not know they were false.
4. A vendee who has obtained title to property under a sale induced by fraud is the owner of the property until the seller elects to rescind the sale, and a bona fide purchaser, without notice of the fraud, from such a vendee, will acquire a good title.

5. The right of the seller to rescind the sale for fraud is superior to the right of a mortgagee whose mortgage was taken to secure an antecedent debt.

6. An antecedent debt, within the meaning of the rule just stated, is a debt contracted before the sale sought to be rescinded.

7. The right of the seller to rescind the sale and reclaim the goods is inferior to the rights of a mortgagee of the property, whose debt was created after the sale, and upon the faith of the mortgagor's ownership, and without notice of the fraud which had been perpetrated upon the seller ; and in such a case it would be immaterial whether the creation of the debt and the execution of the mortgage were contemporaneous, or the creation of the debt antedated the mortgage, provided the mortgage was taken before the right of rescission was exercised, and without notice of the fraud.

8. What would be the status of a mortgagee who extended credit without notice of the fraud, but who had notice at the time the mortgage was taken, is not now decided.

9. In a suit by the seller, brought to rescind the sale and reclaim the goods, against a mortgage of the vendee, the plaintiff carries the burden of proving either that the mortgagee knew of the buyer's fraud, or that the debt which the mortgage was given to secure was created before the sale.

10. A transferee of such a mortgage stands in no better position than the mortgagee.

11. One who purchases in good faith, without notice of the fraud, at a foreclosure sale had under such a mortgage will obtain a good title, although the mortgage may have been given to secure an antecedent debt.

12. Even if the doctrine of lis pendens is applicable to personal property, it has no application in a case where the pleadings do not describe the property in such a way that the identity of the property can be ascertained.

13. One who as the result of a fraud upon the owner comes into possession of property of another, and attempts to create a lien thereon to secure a debt which was in existence before the lienor acquired possession, and the lienee who causes the property to be seized under the lien, and the purchaser at the sale had thereunder, who at the time of the sale had notice of the invalidity of the lien, are joint wrongdoers, and the owner may proceed against one or any number of them at his option, and the failure to hold any of them liable will not release the others.

14. Where in a suit for the wrongful conversion of personal property, brought against several persons as joint wrongdoers, a general verdict for a named sum is rendered against the defendants, the plaintiff can look to any one of them for the entire amount of the verdict, and the question as to whether the other defendants shall be liable to contribute to the one who is compelled to pay, and in what proportion, does not concern the plaintiff.

15. The measure of damages in a suit brought to recover personal property which has been wrongfully converted, where the plaintiff elects to take a money verdict, is the highest proved value of the property at any time between the date of the conversion and the trial, or its value at the date of the conversion, with interest from that date.

16. False representations as to the financial standing and worth of a merchant, contained in a statement made by him to a mercantile agency, to be used as a basis for credit, will constitute a fraud upon any subscriber of such agency acting on the statement, though the merchant did not know when he made the statement that such person was a subscriber of the agency.

17. Where it is material to ascertain whether a representation made by a person as to the amount of his assets in a given year was false, his tax returns for that year are admissible in evidence.

18. The principles above laid down control the case on all material points, and, other than as above dealt with, the assignments of error made in the record do not require any extended discussion.

Argued December 17, 1902.—Decided April 8, 1903. Rehearing denied May 7, 1903.

Equitable petition. Before Judge Roberts. Pulaski superior court. February 6, 1902.

*J. H. Martin,* for plaintiffs in error.

*Hardeman, Davis, Turner & Jones* and *W. L. Grice & Sons,* contra.

COBB, J. On January 21, 1898, the Dannenberg Company presented to the judge of the superior court of Pulaski county a petition in which it was alleged, that at different times during the year 1897 the plaintiff had sold to George D. Mashburn & Company, a mercantile partnership, doing business in Hawkinsville, Georgia, and composed of George D. Mashburn and J. P. Doster, certain articles of merchandise on credit; that the credit thus extended was based solely upon certain written statements as to their assets and liabilities, made by Mashburn & Company to a named association of merchants of which plaintiff is a member; that these statements were false; that the goods sold to the firm have become mingled with their general stock, and it is impossible for plaintiff at this time to designate the portion of such goods remaining unsold; that on January 6, 1898, the partnership executed to the Hawkinsville Bank & Trust Company (hereinafter referred to as the bank) a mortgage on their general stock, to secure an alleged indebtedness of $6,000, and on January 10, 1898, executed similar mortgages to Mrs. Mary C. Fitzgerald and D. T. Mashburn to secure an alleged indebtedness of $1,991.28 to the former and $2,009.46 to the latter; that the mortgage in favor of the bank has been foreclosed and the sheriff is in possession of the stock of goods, and plaintiff is unable to obtain access to them to identify the goods sold by it; that, by reason of the false and fraudulent representations above referred to, the title to the goods did not pass; that, Mashburn & Company being insolvent, unless the sale be rescinded and plaintiff be allowed to reclaim its goods, it can realize nothing on its claim. The prayers of the petition were, that a receiver be appointed to

take charge of the stock of merchandise; that plaintiff be allowed to examine the stock of goods and set aside such of the goods sold by it as remain in the stock; that such goods be sold separately from the remainder of the stock, and the fund thus arising be held by the receiver until plaintiff can obtain a judgment rescinding the sale; that the mortgages above described be declared void, in so far as they cover the goods sold by plaintiff and identified by it; that the sale be rescinded and plaintiff be allowed to recover the identified goods; that the sheriff be enjoined from proceeding with the mortgage foreclosure and with the sale of the goods thereunder, and the mortgage creditors be enjoined from enforcing their mortgages, especially in so far as they undertake to create a lien upon plaintiff's goods; and that Mashburn & Company be enjoined from further encumbering their property.    Process was prayed against Mashburn & Company, the members of the firm, and D. T. Mashburn, Mrs. Mary C. Fitzgerald, the Hawkinsville Bank & Trust Company, and Vaughn, sheriff.    Attached to the petition were accounts showing that the defendants Mashburn & Company had bought from plaintiff, on March 16, 1897, merchandise amounting to $230.75, on May 1, $119.65, on August 17, $399.46, and on October 25, $16.50.    There were also attached to the petition copies of the statements made by them to the association of merchants as to their financial standing; such statements being dated July 14, 1896, and May 11, 1897, and showing that in 1896 the defendants claimed to have assets over and above all liabilities amounting to $20,000, and in 1897 $30,000.

On this petition the court passed an order granting the injunction prayed for, ordering the sheriff to allow the plaintiff to examine the stock of merchandise and identify the goods sold by it and to mark and set apart the same, and ordering that the sale by the sheriff proceed, the goods identified by plaintiff to be sold separately and the proceeds of the sale turned over to the receiver named in the order, to be held subject to the further order of the court.    At the February term, 1898, the plaintiff filed an amendment to its petition, alleging that the mortgages referred to in the original petition were given to secure a past-due indebtedness, that the mortgagees were not bona fide purchasers for value, and acquired no lien or equity in or to the property delivered to defendants Mashburn & Company by plaintiff.    It was further alleged in

the amendment that the partnership, on August 13, 1897, wrote to plaintiff a letter in which certain statements as to their assets and liabilities were made, and that these statements were false and fraudulent, and caused plaintiff to extend credit to them. The defendants Mashburn & Company answered the petition, denying all allegations as to fraud and misrepresentations, and averring that title to the goods sold them by plaintiff passed to them upon delivery of the goods. It was further alleged in the answer that a portion of the goods identified and set apart by plaintiff under the order previously granted had been paid for by defendants; that the stock of merchandise, other than the goods so set apart, had been sold by the sheriff and did not bring enough to satisfy the mortgage of the bank; and that the goods set apart by plaintiff are not of sufficient value to satisfy the debt of the bank, which has a claim on the goods superior to that of plaintiff. The defendants holding mortgages answered separately that their mortgages were given to secure a valid and subsisting indebtedness, and that they had no knowledge of any claim of plaintiff to any of the goods in the stock mortgaged, and no knowledge of any fraudulent statements made by Mashburn & Company to induce plaintiff to sell them goods. At the hearing, on February 21, 1898, the judge passed an order denying the prayers for injunction and receiver, revoking the injunction previously granted, and discharging the temporary receiver previously appointed. At the August term, 1898, the plaintiff offered an amendment, alleging that the goods identified and set apart by plaintiff under the order of court had been sold, under the mortgage execution of the bank, to R. V. Bowen for the sum of $327.88, on March 17, 1898; that the bank's mortgage had, previously to the sale, been transferred to Bowen; and that while Bowen was not the only purchaser at the sale, he was the legal holder of the notes and mortgage of the bank and received the proceeds of the sale. The plaintiff prayed, that Bowen be made a party defendant and required to answer at the next term of the court; and that it have judgment against the defendants for the sum of $438.16, the value of the property of the plaintiff wrongfully converted as set forth in the amendment. This amendment was, so far as appears, allowed without objection, on August 15, 1898. Bowen answered at the succeeding term of the court, setting up that he was a bona fide purchaser of the mortgage execution of the bank; that the sale was

honest and fair, and there was nothing wrongful or fraudulent in the purchase of the goods; that he bought the property at the mortgage sale and got a good title thereto, and the money arising from the sale was properly applied to his mortgage execution. The amendments filed by the plaintiff were also duly answered by the other defendants.

Nothing seems to have been done in connection with the case until the August term, 1901, when it came on for trial, at which time the plaintiff further amended its petition, setting out a copy of a statement dated July 16, 1897, alleged to have been made by George D. Mashburn & Company, as to their financial standing and worth, to R. G. Dun & Company, a mercantitle agency, their net worth being stated to be $31,000. It is alleged that the plaintiff, in making the sales referred to in the original petition, also relied upon this statement, which was false in that the assets were placed too high and the liabilities too low. The defendants Bowen and D. T. Mashburn also filed, at this term of the court, an amendment to their answers, in which they alleged "that the goods sold by the sheriff and selected as the goods sold by the plaintiff to Geo. D. Mashburn & Company in the petition of plaintiff are not the same goods;" that the bank took a mortgage on all the stock of goods of Mashburn & Company on January 6, 1898, for money loaned by the bank to the mortgagors after the sale of all the goods by plaintiff, believing at the time that Mashburn & Company were the owners of the goods, and stood in the same position as a bona fide purchaser without notice; that these defendants are bona fide purchasers for value from the bank, and stand in its shoes; that the plaintiff has in open court released the bank, by announcing that it would not ask any judgment against it, and this act of the plaintiff releases these defendants, who hold and claim under the bank and are entitled to the same rights, privileges, and protection as the bank was under its mortgage. It appears from the bill of exceptions that the plaintiff did, in open court, release the bank as set forth in the foregoing answer of Bowen and Mashburn. The trial resulted in a verdict for the plaintiff for $438.16, with interest against the defendants George D. Mashburn & Company, George D. Mashburn, J. P. Doster, R. V. Bowen, and D. T. Mashburn. The defendants filed a motion for a new trial, which was overruled; and they, together with the sheriff and Mrs. Fitzgerald, united in a bill of exceptions, in which they

joined the bank as a coplaintiff in error, complaining of the judgment overruling the motion for a new trial.

In view of the state of the pleadings at the date of the trial, the case is to be treated simply as a suit brought for a wrongful conversion of personal property.  The case of the plaintiff absolutely depends upon whether it sold the identical goods which were set apart by the sheriff, upon the faith of statements of Mashburn & Company as to their financial standing, and whether these statements were false.  If it did not sell upon the faith of such statements, then its case fails, without reference to any other question. According to the testimony of the plaintiff's witness Chapman, none of the identified goods were embraced in any of the invoices dated prior to May 1, 1897.  We will therefore eliminate the invoice of March 16, 1897, from this discussion.  The only statement made prior to the sale of the goods contained in the invoice of May 1, 1897, was the one dated July 14, 1896, which was more than nine months before the date of the invoice.  As to the sale of goods in this invoice, the right of the plaintiff to rescind depended upon whether the credit was actually given upon the faith of the statement made in the preceding year, and whether, under all the circumstances, the plaintiff had a right to act upon the faith of a statement made to a mercantile agency at such a distant day in the past, and whether a merchant making statements to such agencies intends for them to be relied upon after the lapse of such a time. No arbitrary time can be fixed when a statement to a mercantile agency will become "stale" and persons should no longer act upon it; but whether such a time has elapsed must be determined by the jury according to the circumstances of each case.  See, in this connection, *Waldrop* v. *Wolff*, 114 *Ga.* 613 (4).  As to the other invoices, there were other statements claimed to have been relied on as a basis of credit, which were not so remote from the date of sale. The jury should have been instructed that if the identified goods were sold upon the faith of statements on which the plaintiff had a right to rely as a basis of credit, the plaintiff had a right to rescind the sale of all such goods and recover the same as against Mashburn & Company, if the statements were false; but that if a portion of such goods were sold upon the faith of statements of the character just indicated, and a portion were sold upon the faith of statements made at such a time prior to the date of sale that it

could not, under all the circumstances, have been reasonably expected or intended that such statements would be made the basis of a credit after the lapse of such a time, the plaintiff would have no right to rescind as to such of the goods as were so sold; and that under such circumstances it was incumbent upon the plaintiff to separate the goods it was entitled to recover from those it was not entitled to recover, and failing to do this, the action would fail.

There was evidence from which the jury could find that the plaintiff, in extending credit to Mashburn & Company, relied upon statements made by them to the mercantile agencies as a basis for credit, and that these statements were false. There was also evidence which would support a finding that as to some of the sales, even if not as to all, the statements relied on were made at such a time that plaintiff had a right to act on them, and that Mashburn & Company intended they should be acted on by those to whom they applied for credit. The misrepresentations under such circumstances constituted in law a fraud upon the plaintiff, whether Mashburn & Company knew of their falsity or not. This being so, the plaintiff was entitled, as against them, to rescind the sale and retake possession of such of the goods as were in the stock at the time the suit was filed and could be identified by it, if in making the sale of such goods the plaintiff had a right to rely upon the statements acted on by them. *Newman* v. *Claflin,* 107 *Ga.* 89. There was also evidence from which the jury could find that the goods identified and set apart by the plaintiff under the order of court were sold by the plaintiff and had never been paid for. This being so, the plaintiff was entitled to recover at least a portion of the goods, unless some one or more of the defendants holding mortgages had obtained a valid subsisting lien thereon, or unless Bowen and D. T. Mashburn were to be regarded as bona fide purchasers without notice of the fraud of Mashburn & Company. It has been repeatedly ruled by this court that a creditor who takes a mortgage to secure an "antecedent debt" on goods which, although in the possession of the mortgagor, were obtained as a result of fraudulent misrepresentations as to his financial standing and ability to pay, which induced the seller to act to his injury by parting with the possession of the goods, does not acquire any lien on the goods as against the seller's right to rescind the sale on account of the fraud. *Dinkler* v. *Potts,* 90 *Ga.* 103 ; *Exchange Bank* v. *Claflin,*

100 *Ga.* 640; *Atlanta Brewing Co.* v. *Bluthenthal*, 101 *Ga.* 541; *Newman* v. *Claflin*, 107 *Ga.* 89, 97; *Matthews* v. *Kennedy*, 113 *Ga.* 378. See in this connection, Jones, Chat. Mortg. (4th ed.) § 81. This doctrine rests in part upon the theory that the debt of the mortgage creditor was not contracted " on the faith of the property in the possession of the debtor." See *Matthews* v. *Kennedy*, supra.

A person in possession of personal property is presumptively the owner thereof. One in possession of goods as the result of a sale brought about by fraud is the owner until the seller elects to rescind the sale. Civil Code, §§ 3540, 2696. Hence, when goods are sold and delivered to a merchant, to be paid for at a future time, the title to such goods is vested in the vendee, notwithstanding the sale was brought about by the perpetration of a fraud; and while the vendor may rescind the sale and reclaim the goods if the credit was induced by fraudulent misrepresentations upon the part of the vendee, the vendor can not, in such a case, follow the goods in the hands of an innocent party who has, for a valuable consideration, come into possession of them, or who, for a like consideration, has acquired a lien on them. An examination of the cases above cited will show that in every instance where the creditor was not allowed to enforce his lien, the debt which the mortgage was given to secure was contracted before the goods came into possession of the mortgagor. In *Dinkler* v. *Potts*, supra, the rule is laid down that the seller's right to rescind for fraud is superior to the right of a mortgagee whose mortgage secures an " antecedent debt." It is insisted that the word " antecedent," in this ruling, refers to the date of the mortgage. We think it refers, not to the date of the mortgage, but to the date of the sale, that is, an antecedent debt is one created before the date of the sale sought to be rescinded. A debt created after the sale on the faith of the property in the possession of the vendee, although not secured by mortgage until some time after the debt was created, is not an antecedent debt within the meaning of the rule, provided of course the mortgage was executed before the seller exercised his right to rescind. An examination of the case of *Exchange Bank* v. *Claflin*, supra, will, we think, show this. It was there said: " A title obtained by fraud is voidable in the vendee and is good only when set up by a bona fide purchaser without notice. Civil Code, § 3540. A creditor by mortgage who did not extend credit on faith of the

property, title to which was obtained by fraud, is not such a purchaser as will be protected." The present case was tried on the theory that the word " antecedent," as used in the cases above cited, related to the date of the execution of the mortgage; and this erroneous conception of the law affected numerous rulings and instructions of the court, and because of this erroneous theory a new trial necessarily results. There was no evidence showing that the bank had notice of the fraud perpetrated by Mashburn & Company upon Dannenberg, either at the time credit was extended, or at the time the mortgage was executed. What would have been the status of the bank if it had acquired notice of the fraud after the credit was extended, but before the mortgage was taken, need not now be determined.

If the debt of the bank antedated the sale of the goods by plaintiff to Mashburn & Company, and the bank, after notice of plaintiff's intention to rescind the sale and retake its goods, either caused the goods to be seized on the mortgage execution, or, if at that time the goods had been seized, caused them to be retained by the sheriff, this act on the part of the bank was such a trespass as would render it liable to the plaintiff for such damages as it sustained on account of this wrongful act. If Bowen, when he took a transfer of the mortgage from the bank, had notice of the plaintiff's having elected to exercise its right to rescind the sale to Mashburn & Company, and as transferee of the mortgage caused the property to be seized and became the purchaser at the sale, either alone or jointly with another, he would be liable to the plaintiff for the trespass thus committed upon its property. If D. T. Mashburn became a joint purchaser at the sale with Bowen, and had notice of the facts above referred to, and took possession of the property jointly with Bowen, he would thus render himself liable as a trespasser jointly with Bowen, the bank, and Mashburn & Company. On the other hand, if the bank extended credit to Mashburn & Company on the faith of the stock made up in part of plaintiff's goods, and took a mortgage on the stock to secure the debt thus contracted, having no notice, either at the time the credit was extended or the mortgage was taken, of the fraud of Mashburn & Company, neither the bank nor any one claiming under it would be liable to the plaintiff. If the facts were such as to render the bank liable as a trespasser for either causing the execution to be levied, or causing the

goods to be retained under levy, and Bowen and D. T. Mashburn became the purchasers at the sale without notice of the fraud that had been perpetrated by Mashburn & Company upon the plaintiff, they would not be liable to the plaintiff.    If the bank extended credit to Mashburn & Company on the faith of their ownership of the stock of goods, and the goods of the plaintiff were in the stock at the time the credit was extended, and the bank had no notice of the fraud which Mashburn & Company had perpetrated upon the plaintiff, either at the time the credit was extended or when the mortgage was taken, then the rights of the bank, as well as of its transferee, would be superior to the right of the plaintiff to rescind the sale, and the purchasers at the foreclosure sale would get a good title to the goods of the plaintiff, even if it should appear that the transferee at the time of the transfer knew of the fraud which had been perpetrated by Mashburn & Company upon the plaintiff, and even though the purchasers at the foreclosure sale had full notice of the fraud.    A mortgagee under such circumstances being entitled to the same rights as a bona fide purchaser without notice, the doctrine that a purchaser with notice from a purchaser without notice would get a good title is applicable.    As it was not contended at the last trial, and probably will not be contended on another trial, that the bank had notice of the fraud of Mashburn & Company at the time it extended credit to them, it is not necessary to determine what would have been the effect, upon the rights of the transferee and the purchasers at the sale, of the bank's having had notice of the fraud, if the transferee of the mortgage or the purchasers, at the date of the transfer or at the date of the sale, had no notice of the fraud.  ·  Of course, if the purchasers had notice, at the time of their purchase, that the plaintiff had exercised its right to rescind the sale and had filed a suit for this purpose, they would be liable to plaintiff for whatever damages it sustained as a result of their taking possession of the goods.    While it is not conceded that the purchasers had actual notice of the filing of the suit, it was undisputed that there was such a suit pending at the time of the sale, and it therefore becomes necessary to determine how far the mere pendency of this suit would be notice to the purchasers.

There seems to be much conflict among the authorities as to whether the doctrine of lis pendens is applicable to personal prop-

erty of any character.    Bennett, Lis Pendens, §79 et seq.; 21 Am. & Eng. Enc. L. (2d ed.) 626 et seq.  The doctrine seems to extend to purchasers at judicial sales under judgments or decrees.  21 Am. & Eng. Enc. L. (2d ed.) 645-6.    Even if it be conceded that the doctrine of lis pendens does apply to personal property, we do not think the pendency of the suit brought by the plaintiff in this case affected Bowen and D. T. Mashburn, as purchasers at the foreclosure sale, with notice of the claim of plaintiff to the particular goods sold.    In order to have this effect it was absolutely necessary that the property bought at the sale under the mortgage should have been so described in the pleadings as to put the public on notice that the plaintiff claimed title to it.    The rule has been thus stated : "A lis pendens will be created where the property involved in suit is described, either by such definite and technically legal description that its identity can be made out by the description alone, or where there is such a general description of its character, or status, and by such reference that, upon inquiry, the identity of the property involved in litigation can be ascertained."    Bennett, Lis Pendens, §93.    The purchaser need look no further than the pleadings and exhibits in the suit, and if there is not enough in these to put a prudent person on inquiry, the prosecution of which would lead to notice, the purchaser will be protected.  Id. § 93 a.  Applying these rules to the present case, we do not think the description of the goods sought to be recovered was sufficient to affect the public with notice.    The petition makes no effort whatever to describe the goods which it is alleged the plaintiff has a right to recover.    On the contrary, the plaintiff's inability to do so is admitted, and it prays that it may have access to the stock of goods belonging to Mashburn & Company, in order to examine the same and segregate the goods which it claims the right to recover.    The invoices attached to the petition as exhibits merely indicate the class of goods sold by plaintiff to Mashburn & Company on various dates.    There is no attempt whatever to allege what part of these goods have been sold by Mashburn & Company, or, indeed, that any of the goods still remain in the stock.    The prayer of the petition is that plaintiff may be allowed to examine the stock and to identify and set aside such of the goods "as may remain in said stock."    The mere fact that goods bearing the plaintiff's mark and similar to those sold to Mashburn & Company are offered for sale under legal process after

the filing of the plaintiff's petition is no notice whatever to prospective purchasers that they constituted a part of the stock of Mashburn & Company and were disposed of by them after the filing of the suit. Nor would the mere stamp of the plaintiff's mark on the goods be sufficient to put a prudent person even on inquiry to ascertain in whose possession they were when seized under legal process, the process and the proceedings connected with the sale being apparently regular and valid.

The mortgage to the bank purported to constitute a lien on the entire stock of goods of Mashburn & Company in their possession at the time the mortgage was executed. As we have seen, it was in fact a valid lien on all of the goods sold by plaintiff, except such as were sold after the debt which the mortgage was given to secure was created. It is apparent, therefore, that the pendency of the suit would not be sufficient to affect persons claiming under the bank's mortgage with notice of the particular goods upon which it did not constitute a lien. The burden was upon the plaintiff to show a right to the possession of the goods in controversy. The presumption is that the possession of the defendants who had control of the goods was lawful and valid; and the mortgages of the other defendants being on their face valid and prima facie constituting liens on the goods, the burden was on the plaintiff to establish a state of facts which would invalidate the mortgages so far as its goods were concerned. The burden is on any one attacking an instrument apparently valid on its face to show its invalidity, and to do this he must introduce evidence which clearly and satisfactorily establishes this fact. See *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (3). The question is, therefore, whether the plaintiff carried this burden. No effort was made to charge the bank with knowledge of the fraud of Mashburn & Company. The bank's mortgage was dated January 6, 1898. The evidence shows that on May 1, 1897, Mashburn & Company bought goods from plaintiff amounting to $119.65; on August 17, $399.46; on October 25, $16.50. It probably can be derived from the evidence that a part of the May bill was paid, but this is immaterial. On May 14, 1897, credit was extended to Mashburn & Company by the bank to the amount of $2,000, on June 15, $2,000, on June 29, $1,000, on July 28, $1,000. The evidence also shows that some small amounts, it does not appear how much, were loaned by the bank after August

13. It appears from the testimony that these various sums were loaned by the bank on the faith of Mashburn & Company's ownership of the stock of goods in their store.   Under this state of facts, the lien of the bank's mortgage attached to such of the goods as were in the stock when the respective loans above referred to were made, and to the extent of the amount of such loans.   The plaintiff certainly was not entitled to recover, as against the bank, any of the goods sold on May 1; and as there was evidence from which a jury could find that some of these goods were among the identified goods, and there was nothing to show what was the quantity, it is impossible from the evidence to tell just how much it ought to have recovered.

It appears from the record that the plaintiff announced in open court that it would not ask any judgment against the bank; and it is contended that this released Bowen and D. T. Mashburn. · We do not think the release of the bank had this effect.   When a tort is committed by two or more persons, each contributing to the injury as a tort-feasor, the party injured may, at his election, hold them liable in separate suits or may sue all or any two or more of them jointly in the same suit.   Several persons acting independently but causing together a single injury are joint tort-feasors, ·and may be sued either jointly or severally.   15 Enc. P. & P. 557-8. The general rule is thus stated in *Brooks* v. *Ashburn*, 9 *Ga.* 298: " Where an immediate act is done by the co-operation or the joint act of two or more persons, they are all trespassers, and may be sued jointly or severally; and any one of them is liable for the injury done by all.   To render one man liable in trespass for the acts of others, it must appear either that they acted in *concert*, or that the act of the party sought to be charged ordinarily and naturally produced the acts of the others."   Applying this rule to the facts of the present case as claimed by the plaintiff, we think it clearly appears that Mashburn & Company, the bank, and Bowen and D. T. Mashburn were all joint tort-feasors.   The wrong which the plaintiff complained of was that it was deprived of its prop·erty.   This wrong began with the act of Mashburn & Company in making false representations which induced the plaintiff to extend them credit, and ended with the sheriff's sale which resulted in Bowen and D. T. Mashburn coming into possession of the property claimed by the plaintiff.   There was a series of independent acts

by the different parties, but all contributed to and in part brought about the final result which placed Bowen and D. T. Mashburn in possession of goods which the plaintiff claimed to be its property. The wrongful act of Mashburn & Company in making the false representations and in giving a mortgage on the goods to secure an antecedent debt, the wrongful act of the bank in requiring the sheriff to retain the property under the levy of the mortgage execution after it had notice that the lien of its mortgage was not superior to the plaintiff's right to recapture its goods, the wrongful act of Bowen as transferee of the mortgage in causing the property to be sold at sheriff's sale after full knowledge of all the facts necessary to charge him with notice of the plaintiff's title, and the wrongful act of Bowen and D. T. Mashburn, who, after a like notice, came into possession as pretended purchasers at the sheriff's sale and converted the same to their own use, all combined to bring about the tort by which the plaintiff complains that it was deprived of its property. It may be that some or all of these wrong-doers have been guilty of a complete conversion as against the plaintiff, independently of the acts of any of the others; but it is also true that the concurrent acts of all have contributed directly to the consummation of the final wrong, that is, the conversion of the property by Bowen and D. T. Mashburn, the pretended purchasers at the sheriff's sale. Under such circumstances the plaintiff had a right to choose whom it would hold liable for the wrong that had been perpetrated upon it. Any one of them who was guilty of a complete tort could have been sued alone, or any two or more of them who contributed to a complete tort by independent acts could be sued jointly; for all who had any direct connection with the final and ultimate wrong could be made defendants in one suit. Dicey, Part. Act. (2d Am. ed.) 448 et seq.; Barb. Part. Act. (2d ed.) 317; *Graham* v. *Gold Mining Co.,* 71 *Ga.* 296 (3 *a*); *Central of Ga. Ry. Co.* v. *Brown,* 113 *Ga.* 414.

The plaintiff elected to bring suit against Mashburn & Company, the bank, Bowen, and D. T. Mashburn. At the trial it was announced that the plaintiff did not ask a judgment against the bank. While the bank was not stricken from the record as a party to the case, the case proceeded, after this announcement, as if the bank was no longer a party. Inasmuch as the plaintiff had a right of election in the first instance as to whom it would sue, and as, under

our system of amendments, it had an undoubted right to strike from the record, at any time before verdict, any party defendant in the case, we think the practical effect of this announcement was to eliminate the bank as a party, and it was not essential that it should have been formally stricken from the record.    The latter course would certainly have been more regular, but the practical effect of each is the same.    It is therefore to be determined whether, in a suit brought against several persons as joint tort-feasors, a dismissal by the plaintiff as to one of them would operate as a release of the others.    Did the release of the bank have the effect of depriving the other defendants of any right, as against the plaintiff, which they would have had if the bank had remained a party and liable in the suit?    It is contended that the other defendants would have had a right to call upon the bank to contribute its proportionate part to the amount which would be assessed against them as damages, and that the release of the bank had the effect of depriving them of this right.    At common law joint tort-feasors were not entitled to contribution.    Dicey, Part. Act. (2d Am. ed.) 449; Cool. Torts, (2d ed.) *134 et seq.; *Chattahoochee Brick Co.* v. *Braswell,* 92 *Ga.* 633.    This rule of the common law is still of force in Georgia, except so far as it has been modified by what is contained in the Civil Code, as follows: "§ 3915.    Where several trespassers are sued jointly, the plaintiff may recover, against all, damages for the greatest injury done by either.    But the jury may, in their verdict, specify the particular damages to be recovered of each, and judgment in such case must be entered severally. § 3916. If judgment is entered jointly against several trespassers, and is paid off by one, the others shall be liable to him for contribution." It has been held that section 3915 is not applicable to suits for injuries to the person.    *Hunter* v. *Wakefield,* 97 *Ga.* 544, and cit. Each has been several times treated as being applicable to actions of trespass to land; and for the purposes of this discussion it will be assumed that they are equally applicable to a case of the character disclosed by the present record.    The sections certainly provide for contribution among joint trespassers against whom a judgment has been entered, and to this extent change the common law. They do not, however, purport to change so much of the common-law rule as gives to a person injured by the acts of several persons, under circumstances where they can be treated as joint wrong-

doers, the right to elect how many and whom he will sue. This rule is still of force in Georgia, as we have before shown, and the sections of the code must be construed in the light of this fact. Being in derogation of common law, they must be strictly construed; and it is clear that they provide for the right of contribution only among those who are sued and against whom judgment has been rendered.

While, therefore, if the bank had remained a party and had been included in the judgment, the other defendants could have called on it to contribute, the provisions of the code do not give them the right to look to the bank for any part of the judgment rendered against them alone. But it does not follow that this affords them any ground of complaint against the plaintiff. The right of contribution among joint tort-feasors is absolutely dependent upon the right of election which the law gives the plaintiff. It exists among those whom he elects to sue jointly, and does not exist as to those whom he fails to join as defendants to the suit. Under no other construction could the right of contribution and the right of election harmonize, and both are equally the law of this State. As we have stated above, the announcement of the plaintiff that it would not hold the bank liable was the same, in effect, as if the bank had been formally stricken by amendment as a party defendant to the case; and when the bank was thus released, the case stood as if it had never been sued. The plaintiff having exercised its right not to sue the bank, or, what is the same thing in effect, having determined not to hold it liable after it was sued, the defendants against whom judgment was rendered can not complain because the consequence of this election deprived them of a right which they would have had if the plaintiff had seen fit to elect to hold the bank liable in the suit. It was distinctly ruled in *Southwestern Railroad* v. *Thornton*, 71 *Ga.* 61, 65, that the injured party had this right of election, and that the question of contribution among the defendants was no concern of the plaintiff. Where goods wrongfully taken from the true owner have passed through the hands of several wrong-doers, the owner can elect which one he will sue, and he need not join the others as defendants. Certainly he can proceed against the one who at the time of the suit has the property in his possession. Bowen was made a party defendant without objection, and after he was made

a party the case proceeeded as an ordinary action to recover the possession of property which had been converted by the defendants to their own use.    At the time the amendment was offered, the sale had taken place and Bowen and D. T. Mashburn were in possession of the plaintiff's goods.    The plaintiff in an action of trespass or trover may join as defendants all who participated in the wrongful acts, and recover a general verdict for a named sum against all.    Whether the defendants would be entitled to contribution, and, if so, in what proportion, was no concern of the plaintiff.    See, in this connection, Civil Code, §§ 3915–3916; *Southwestern Railroad* v. *Thornton,* 71 *Ga.* 61.    The plaintiff could look to any one of the defendants for the whole amount due it, and it was not necessary that the verdict should specify how much each defendant would be liable for as between themselves.

The plaintiff having elected to take a money verdict, the measure of damages was either the highest proved value of the goods at any time between the date of the conversion and the trial, or the value of the property at the date of the conversion with interest from that date.    Civil Code, § 3917; *Holmes* v. *Langston,* 110 *Ga.* 867, and cit.    *Midville R. Co.* v. *Bruhl,* 117 *Ga.* 329. We do not think the fact that there was a sale of the property by the sheriff and that plaintiff bid at the sale would change this rule.    The amount of plaintiff's bid might throw some light on the value of the property at that time, but would not estop it from attempting to prove a higher value.

The foregoing disposes of the main contentions raised in the case. The motion for a new trial contains nearly forty grounds.    Some of these complain of the admission of evidence which is not set out in the motion, either literally or in substance; others complain of the refusal of the court to permit certain questions to be propounded, but do not state what answers were expected.    None of these grounds can be considered.    Such of the other grounds as present questions necessary to be dealt with, and which are not alluded to in the foregoing discussion, will now be considered.

The court erred, we think, in ruling out the testimony of D. T. Mashburn, to the effect that he kept the books of the firm and that the statements made by the firm as a basis for credit did not overestimate the business.    This was not a mere conclusion on the part of the witness, but a statement made by one who was in a position to

know the truth of the matter under investigation, one who was as conversant with the affairs of the partnership as were the members themselves.    It was not a mere opinion, but a positive statement of a fact founded on an actual examination of the affairs of the firm.

It was also error to admit evidence as to the agreement between D. T. Mashburn and Bowen, that Bowen was to bid in the goods and turn them over to Mashburn, who was to collect the debts due the firm and settle up those due by them.    This evidence was irrelevant and shed no light on the issues involved, and may have operated to the prejudice of the defendants.

There was no error in admitting evidence relating to the statement made by Mashburn & Company to the Credit Clearing House, a mercantile agency.   If Mashburn & Company made the statement to this company as a basis for credit, it was immaterial that they did not know the plaintiff was a subscriber of this agency.   The statement was made for the purpose of being used by all merchants who might be correspondents of the mercantile agency, and the misrepresentations would constitute a fraud on any one of such persons acting on them to his injury.    See 14 Am. & Eng. Enc. L. (2d ed.) 151; Benj. Sales (Bennett's 7th ed.), 469 (notes) ; *White* v. *Magarahan,* 87 *Ga.* 217.

There was no error in admitting testimony as to how much of the firm's indebtedness had been paid.    This was of little importance, but might have had some slight bearing on the question at issue as to the amount of assets the firm had prior to its failure.

There was no error in admitting the tax returns of Mashburn & Company for the year 1896.    They were competent upon the question as to the amount of the firm's assets in that year.    See *Smith* v. *Haire,* 58 *Ga.* 446; *Tolleson* v. *Posey,* 32 *Ga.* 372.

It was argued that as the plaintiff, through its authorized agent, bid at the sheriff's sale, it would be estopped to attack the validity of the sale.    If the purchaser at the sale was misled, by the presence of the agent of plaintiff as a bidder, into a belief that the plaintiff was acquiescing in the sale and thereby recognizing the right of the bank to foreclose its mortgage, or by appearing as a bidder was waiving its rights under the pending suit, such conduct might raise an estoppel.    We, however, find nothing in the present record requiring a ruling on this subject.    See, in this connection, *Osborn* v. *Elder,* 65 *Ga.* 360 ; *Byars* v. *Curry,* 75 *Ga.* 515.

Those portions of the charge to which exceptions were taken are sufficiently covered in that part of the foregoing discussion which involves the merits of the case.   If there was any error committed other than as above indicated, it will no doubt be corrected on another trial.   Let a new trial be had in the light of what is herein laid down.                    *Judgment reversed.   By five Justices.*

ON MOTION FOR REHEARING.

COBB, J.   Application is made for a rehearing upon the propositions laid down in the 5th, 6th, and 7th headnotes.   This raises the question as to what is an "antecedent" or "pre-existing" debt, within the meaning of that rule which asserts that a mortgagee who takes a mortgage to secure a pre-existing or antecedent debt is not a bona fide purchaser for value.   It is contended that a mortgagee is not a bona fide purchaser within the meaning of this rule, unless he pays value at the time his mortgage is taken; that is, unless the consideration of the mortgage passes at the date of its execution, the mortgage is given to secure an antecedent debt.   In 1 Jones on Mortgages, § 460, it is said:   "He [the mortgagee] must have parted with some value or some right upon the faith of the mortgage and at the time of it, to entitle him to protection as a purchaser.   He must have received some new consideration, or must have relinquished some security for a pre-existing debt due him."   In 2 Mechem on Sales, § 924, it is laid down that a seller who has been induced to make the sale by the fraud of the vendee may recover the property from purchasers, pledgees, mortgagees, or others who have acquired a lien on it as security for, or who have taken the property in payment of, an antecedent debt, " unless they have at the time parted with value, released securities, or otherwise changed their position to their prejudice, in reliance upon the vendee's apparent power to transfer the goods to them." In 14 Am. & Eng. Enc. L. (2d ed.) 288, it is stated: "A mortgagee who takes the deed as security for money presently loaned is a purchaser to the extent of his interest in the premises."   The expressions, "at the time," and "presently," as well as similar expressions in some of the decided cases, seem to give support to the contention made by the applicant for a rehearing.   These expressions must, however, be construed in connection with the facts of the cases which are cited to sustain them, or in which they are used.

In all of the cases cited which have been examined, as well as in others to which our attention has been called, it appeared, either distinctly or by inference, that the antecedent or pre-existing debt referred to was a debt created before the fraudulent sale. Certainly in none of them was it shown that the debt was created or the credit extended after the sale. The identical question involved in this case, as to whether, when the debt was created or the credit extended after the sale and on the faith of the mortgagor's apparent ownership of the property, a mere lapse of time between the creation of the debt or the extension of credit and the execution of the mortgage will make the mortgagee the holder of a mortgage given to secure an " antecedent " or " pre-existing " debt, seems never to have been raised in any case. It is certainly one of first impression in this court. Generally the credit is extended and the mortgage taken at the same time. In *Chance* v. *McWhorter*, 26 *Ga*. 315, it was held that a vendor's lien upon land for the unpaid purchase-money will not be set aside in favor of a mortgage given by the vendee to secure an " antecedent debt." It appears from the statement of facts in that case that the debt which the mortgage was given to secure was contracted " long before the sale " of the land. In *Phillips* v. *Roquemore*, 96 *Ga*. 719, it was simply held that a judgment creditor was not a bona fide purchaser for value, even though he extended credit upon the apparent unincumbered ownership of property, and that therefore the holder of a mortgage had a right to reform it as against the judgment creditor. While a judgment creditor has thus been held not to be a purchaser for value, it has nevertheless been often held that when such a creditor had extended credit upon the faith of property the title to which was in the debtor, the rights of the creditor were superior to the rights of one who, having a secret equity in the property, permitted the debtor to take title in his own name and exercise acts of ownership in connection therewith. See *Gorman* v. *Wood*, 68 *Ga*. 524; *Burt* v. *Kuhnen*, 113 *Ga*. 1144, and cit.; *Gentry* v. *Cowan*, 66 *Ga*. 722. There are cases holding that a creditor who accepts goods from a fraudulent vendee will be protected though the goods were taken in payment of a pre-existing debt, this term being apparently used to indicate a debt contracted before the fraudulent sale. See, for example, Shufeldt *v*. Pease, 16 Wis. 689, and cases cited; Lee *v*. Kimball, 45 Me. 172; Butters *v*.

Haughwout (Ill.), 89 Am. Dec. 401.    These decisions are, however, contrary to many of the decisions of this court, and are opposed to the great weight of authority.    . Where a sale is agreed upon and it is the intention of the parties that title shall pass under the sale, and possession of the goods is delivered to the vendee, he is the owner of the goods, notwithstanding the sale may have been brought about by the perpetration of a fraud.    In such a case the fraud does not render the sale void, but only voidable at the instance of the vendor.    2 Mechem, Sales, § 908; Kerr, Fraud & Mistake, 328; Henderson *v.* Gibbs (Kas.) 18 P. 929.    The Civil Code, § 3532, which provides that fraud "avoids the sale," manifestly means, renders it voidable at the election of the vendor.    It certainly does not mean to deprive him of the right to affirm or ratify the contract if he so desires.    The rule would be otherwise, however, if the parties did not intend that title should pass, but the purpose was merely to deliver possession pending negotiations of sale.    Benj. Sales (Bennett's 7th ed.), § 433.    We can see no reason why one who extends credit on one date to a fraudulent vendee on the faith of his ownership of property, without notice of the fraud, and then on a subsequent date, and also without notice, takes a mortgage to secure this debt, should not be treated as standing upon the same footing as one who extends credit without notice of the fraud and on the faith of the vendee's ownership and immediately takes a mortgage to secure the debt.    The distinction between cases like the present and those where the credit was extended before the sale is apparent.    In the latter case the credit can not be extended on the faith of the debtor's ownership of the property, and in the former it can.    The rule which would exclude an ordinary creditor extending credit on the faith of the debtor's ownership, under the strict definition of a bona fide purchaser, is a harsh one; and when such a creditor afterwards and before he discovers the fraud obtains a lien by contract to secure his debt, he is, in our opinion, as much entitled to protection as if the execution of the instrument creating the lien and the creation of the debt had been contemporaneous. If he acts to his injury in extending credit in good faith on the vendee's possession of and apparent indefeasible title to the goods, he ought to be protected, if he subsequently and in good faith and without notice takes a security which would bring him within the class denominated bona fide purchasers.    On the general subject

as to who is a purchaser, see Benj. Sales (7th ed. Bennett), 477 The conclusions stated in the original opinion upon which a rehearing is asked still seem to us, upon further investigation, to be sound, and no sufficient reason has been given why a reargument of the case should be had. *Application denied. By five Justices.*