## FOWLER, trustee, *v.* BRITT-CARSON SHOE CO. *et al.*

In order for the vendor of personal chattels to exercise his equitable right of reclamation on the ground that the purchaser, being insolvent at the time of obtaining the goods, committed a fraud by misrepresenting his solvency and financial standing in statements to the seller, made for the purpose of procuring the goods, and thereby deceiving him and inducing him to act to his injury, it is incumbent upon the vendor, promptly upon discovery of the fraud, to repudiate the contract and make his reclamation. If he omits to do so, but does some affirmative act recognizing title in the purchaser, such as by suing out an attachment for purchase-money, and causing the property to be sold as property of the purchaser, he will thereafter be estopped, in a contest over

the proceeds of sale (brought into court by the sheriff) with the trustee in bankruptcy of the purchaser, from asserting his right of reclamation.
OCTOBER 12, 1911.

Intervention. Before Judge Martin. Montgomery superior court. October 12, 1910.

*L. C. Underwood,* for plaintiff.

*M. B. Calhoun,* for defendants.

ATKINSON, J. On November 15, 1910, a deputy sheriff levied an attachment, which had been issued on November 6th· from a justice's court in favor of the Britt-Carson Shoe Company against James· E. Ricks, on certain personal property as the property of the defendant in attachment, and on the 4th day of January, 1910, sold it accordingly. On the 2d day of January, 1910, less than four months from the date of the issuance of the attachment, James E. Ricks was adjudicated a bankrupt, and James Fowler became trustee of the bankrupt's estate. After the sale of the property by the sheriff, the trustee applied to the superior court for a rule requiring the sheriff to turn over to him the funds derived from the sale of the goods upon which the levy had been made. In his answer the sheriff admitted all of the allegations contained in the petition for rule, except those relative to the title of the trustee in. bankruptcy, set up his want of knowledge on this subject, and answered, further, that he was holding the fund subject to the order of the superior court. The Britt-Carson Shoe Company, the plaintiff in attachment, intervened and asserted a right to the fund. It admitted all of the allegations of the petition, except those relative to the title of the trustee, which were denied. It set up: that the proceeds of sale in the hands of the sheriff were derived from a certain bill of goods which had been purchased from it by Ricks, the bankrupt; that title never passed from intervenor to Ricks, for the reason that he, being insolvent, purchased the goods under specified representations as to his solvency and financial standing, which were false and falsely made for the purpose of deceiving and inducing credit; that, having obtained the goods by deception in such manner, neither Ricks nor the trustee in bankruptcy of his estate acquired title; "that as soon as intervenor learned that a fraud had been perpetrated upon it by said Ricks, by making said false statement, it sued out an attachment for the purchase-money due upon said goods in question, and had as many of said shoes as could be found in the possession of said

Ricks levied upon under said attachment; and that the money now in the sheriff's hands came from the sale of its said goods under said attachment for purchase-money." It was further set up that the superior court had assumed jurisdiction of the goods and money in question long before the petition for adjudication in bankruptcy had been filed, and the superior court, having first acquired jurisdiction, should retain jurisdiction of the funds in question. The intervention was allowed, and the case was afterwards submitted to the judge, upon consent of all parties that the court should hear and determine all issues of law and fact and adjudge to whom the money in the hands of the sheriff should be paid, without submitting any question to the jury. After hearing evidence, which in effect presented the matter as above stated, a judgment was entered finding that the Britt-Carson Shoe Company was entitled to the funds in the hands of the sheriff, and ordering the same turned over to it after payment therefrom of all costs of court. To this judgment the trustee excepted.

By objection to evidence, and motion to strike certain portions of the intervention of the Britt-Carson Shoe Company, and by exceptions to the finding of the court, the single question was made as to the right of the Britt-Carson Shoe Company to have the fund. The contention was: That, after knowledge of the fraud, the Britt-Carson Shoe Company had the election of two remedies: (*a*) to waive the fraud, affirm the contract, and sue for the purchase-price; or (*b*) to repudiate the contract on account of the fraud, and reclaim the goods. That having elected, after knowledge of the fraud, to sue out the attachment, and cause the property to be sold as that of Ricks, the intervenor should be held to have ratified the sale and to be estopped from repudiating it and claiming the goods or their proceeds in the hands of the sheriff. The position thus taken by the trustee in bankruptcy is sound, and the judge committed error by his ruling. While upon discovery of the fraud the Britt-Carson Shoe Company could elect to repudiate the sale and reclaim the goods or their proceeds (*Newman* v. *Claflin Co.,* 107 *Ga.* 89 (32 S. E. 943); *Mashburn* v. *Dannenburg Co.,* 117 *Ga.* 567 (44 S. E. 97); *Silvey* v. *Tift,* 123 *Ga.* 804 (51 S. E. 748, 1 L. R. A. (N. S.) 386)), it was incumbent upon it to do so promptly. After knowledge of the fraud, if the intervenor failed to repudiate it, but did something showing its intention to abide

by the contract, it would be held to have waived the fraud and to have ratified the contract. *Tuttle* v. *Stovall,* 134 *Ga.* 325, 328, 329 (67 S. E. 806), and citations. Suing out an attachment for the purchase-money would be a ratification of the contract.

*Judgment reversed. Beck, J., absent. The other Justices concur.*