## In re WHATLEY BROS.

(District Court, N. D. Georgia, W. D. August 21, 1912.)

### No. 537.

BANKRUPTCY (§ 140*)—GOODS FRAUDULENTLY PURCHASED—RESCISSION BY SELLER—RIGHTS OF TRUSTEE.

Civ. Code Ga. 1910, § 3225, provides that a fraudulent buyer of goods can convey title to an innocent purchaser good as against the claims of judgments of the defrauded creditors; and section 4120 declares that a title obtained by fraud, though voidable in the buyer, will be protected in a bona fide purchaser without notice. *Held* that, under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), as amended by Act June 25, 1910, c. 412, 36 Stat. 838 (U. S. Comp. St. Supp. 1911, p. 1491), declaring that a trustee in bankruptcy shall take as a creditor having a lien by legal or equitable proceedings for the benefit of creditors generally, one induced to sell goods to a bankrupt by reason of his fraud is not entitled to reclaim the goods from the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 221, 225; Dec. Dig. § 140.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Whatley Bros., bankrupts. Proceedings by the David Adler Sons Clothing Company to reclaim certain goods. On certificate to review a referee's order denying the relief prayed. Affirmed.

The report of the referee on the matter involved in this case is as follows:

"David Adler Sons Clothing Company having, on the 1st day of May, 1912, filed in this court its petition claiming title to certain property alleged now to be in the hands of W. A. McAllister, trustee of said bankrupt firm, and said matter having been, by consent of parties, set for hearing at Fort Gaines, Georgia, on the 3d day of May, 1912, and, after hearing and considering the same, the following findings are made by the undersigned referee:

"(1) That Whatley Bros.' stock of merchandise was completely destroyed by fire during the spring or summer of 1911, and thereafter, about the first of the fall of 1911, said firm began business again in Fort Gaines, Ga., and during the months of September and October received from said claimants the shipments of goods a part of which they now seek to reclaim, and the order for which said goods was taken April 27, 1911.

"(2) That for four or five seasons before said fire, said David Adler Sons Clothing Company had sold to said Whatley Bros., and knew that they were a little slow in paying bills, but did not know of their insolvency.

"(3) That at the time said order was given it is not shown that said Whatley Bros. made any definite statement to said claimants, for the purpose of obtaining credit for said goods, as to their financial standing.

"(4) That at the time said goods were delivered said Whatley Bros. owed amounts greatly in excess of their assets, which was unknown to claimants; but, under the evidence, it does not necessarily follow that said Whatley

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bros. did not intend, at the time of the purchase and delivery of said goods, to pay for the same, as the uncontradicted evidence shows that since that time said bankrupts have paid large sums to creditors, and T. J. Whatley testified that he intended to pay for said goods purchased from said claimants.

"(5) That the merchandise now sought to be reclaimed was among the first goods shipped to said Whatley Bros. when they reopened business in the fall of 1911, and now is a part of the oldest stock held by the trustee as assets of the bankrupt firm.

"(6) That since said merchandise was purchased and received from said David Adler Sons Company said Whatley Bros. have contracted many other obligations, which are still due and have been proven as claims against said bankrupt estate."

The following are given as conclusions of law:

"(1) That this reclamation proceeding is not a contest between a creditor and the bankrupt, but is a contest between one creditor and the trustee, who represents the interests of all the creditors of said bankrupt.

"(2) That under the act, as amended June 25, 1910, 'such trustee as to all the property in the custody, or coming into the custody of the bankrupt court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien or equitable proceeding thereon.'

"Wherefore it is considered, ordered, and adjudged, that the petitioning creditors, David Adler Sons Clothing Company, are not entitled to recover from the trustee the merchandise sought to be reclaimed, and the prayers of said petition are therefore refused."

M. F. Goldstein and Little & Powell, all of Atlanta, Ga., for interveners.

Jas. W. Harris, of Cuthbert, Ga., for trustee.

NEWMAN, District Judge. If the referee correctly decided the main legal question involved in this case, it is unnecessary to consider any other matter.

The question is this: Even assuming that goods sold to a merchant on time were obtained by false and fraudulent representations, so that the seller, upon ascertaining the facts, could subsequently reclaim the goods as between himself and the purchaser, nothing else intervening, would the seller, since the amendment to the bankruptcy act of 1910, have the same right against the trustee in bankruptcy, who had taken possession of the stock of goods of which the goods in controversy were a part? In other words, is the trustee, by the act referred to, vested with such a lien as that it overrides and is superior to the right of the seller to reclamation because of fraud inducing the sale?

While the courts are not in entire accord, I think it may be considered as settled now that the purpose of the act of June, 1910, was to give the trustee in bankruptcy a lien for the benefit of creditors generally, such as a creditor would have "by legal or equitable proceedings." Such is the plain language of the amendment, and there is no escape, so far as I can see, from the conclusion that this was the intent of Congress in its enactment. It is recognized, of course, that the main purpose of the amendatory act of 1910 was to relieve general creditors from the situation which had been created by many decisions, notably by the decision in the York Manufacturing Company Case, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, by which

the liens of unrecorded mortgages and conditional bills of sale, which, under the state laws, would be good as between the parties, were held as good against the bankrupt estate. But, though probably having this particular purpose more distinctly in mind, Congress gave to trustees in bankruptcy this lien, which operates generally and which attaches to all property coming into the custody of the bankrupt court.

It has the same effect as a judgment at law or in equity. In re Bazemore (D. C.) 189 Fed. 236; In re Williamsburg Knitting Mill (D. C.) 190 Fed. 871. This latter case affirmed that of the Circuit Court of Appeals for the Fourth Circuit, in Holt v. Henley, Trustee, 196 Fed. 1005 (February 23, 1912); also In re Farmer's Supply Co. and Federal Chemical Co. v. House, Trustee, 196 Fed. 990, decided in this district May 13, 1912.

My attention has been called to In re Flatland (C. C. A.) 196 Fed. 310, which does not seem in accord with other cases; but I cannot agree with it, as I understand it.

How does such a lien affect the property in question here? Even assuming the allegations of the claimant's petition that the goods were obtained by the bankrupt by fraud to be true, section 3225 of the Code of Georgia of 1910 is as follows:

"Where a sale void as against creditors is made, and the property has not been seized, and no step taken to set the sale aside, the fraudulent vendee can convey to an innocent purchaser from him, for value and without notice of the fraud, a title, good as against the claims or judgments of the defrauded creditors."

Section 4120 of the Code is as follows:

"A title obtained by fraud, though voidable in the vendee, would be protected in a bona fide purchaser without notice."

The Supreme Court of Georgia, in Mashburn & Co. v. Dannenberg Company, 117 Ga. 567, 575, 44 S. E. 97, 101, had under consideration the effect of a mortgage on goods executed while in the possession of a vendee whose vendor subsequently sought to reclaim the same because of fraud in the sale. In the opinion by Judge Cobb this is said:

"Hence, when goods are sold and delivered to a merchant, to be paid for at a future time, the title to such goods is vested in the vendee, notwithstanding the sale was brought about by the perpetration of a fraud; and, while the vendor may rescind the sale and reclaim the goods if the credit was induced by fraudulent misrepresentations upon the part of the vendee, the vendor cannot, in such a case, follow the goods in the hands of an innocent party who has, for a valuable consideration, come into possession of them, or who, for a like consideration, has acquired a lien on them."

The above case was evidently very carefully considered by the Supreme Court of Georgia. There was a rehearing, and the decision of the court, which, so far as material here, is embodied in the language above quoted, was adhered to, as originally handed down.

It is earnestly contended here that the title which a vendee takes, in a case like this, is in the nature of a defeasible title; that it is just such a title as when a minor makes a deed or consummates a sale. It is conceded that the title is voidable and not void, but that when

avoided it relates back, just as in the case of a sale by a minor, which is voidable rather than void.

Counsel for the claimant rely earnestly upon the case of Landauer v. Cochran, 54 Ga. 533. In that case an attachment against a purchaser was levied on goods sold by a New York firm, in transit. The seller, finding that the purchaser was insolvent, filed a claim to the goods, and the claim was sustained, first, on the ground of the right of stoppage in transitu, but mainly on the ground that the goods were obtained from the seller by fraud, which, it is said, was clearly shown, and therefore no title passed.

The difference between this last case and that of Mashburn & Co. v. Dannenberg Co. is that in the last case cited and relied on by claimants there had been no actual delivery of the goods. The only delivery to the purchaser was the delivery to the common carrier. This is a marked difference in the facts; but still it must be admitted that the two cases are not in entire harmony. I think, however, that the case of Mashburn & Co. v. Dannenberg Co. must control. It is a more recent case, and the opinion shows in every way that it was most carefully considered by the court, and then reconsidered on motion for a rehearing.

The language quoted above could not have been carelessly used, and is so clearly applicable to the present case (assuming the trustee to have, under the amendment of 1910, the character of lien indicated above), that it is, in my opinion, controlling on the question presented.

The action of the referee in refusing the application for reclamation on the face of the petition is approved, and his decision affirmed.

If counsel should desire to take this case further and have it reviewed by the Circuit Court of Appeals, an order will be made which will protect the rights of the claimant in some way until the case can be determined by the higher court, and, if possible, at the same time allow the goods to be sold and the bankruptcy case expedited as much as possible.